IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
DURHAM DIVISION
Civil Action No. 1:13-CV-00949

| | |
|---|---|
| DAVID HARRIS; CHRISTINE BOWSER; and SAMUEL LOVE,<br><br>    Plaintiffs,<br><br>v.<br><br>PATRICK MCCRORY, in his capacity as Governor of North Carolina; NORTH CAROLINA STATE BOARD OF ELECTIONS; and JOSHUA HOWARD, in his capacity as Chairman of the North Carolina State Board of Elections,<br><br>    Defendants. | **DEFENDANTS' ANSWER** |

**FIRST DEFENSE**

Pursuant to Rule 12(b)(3), the Middle District of North Carolina is an improper venue. This action should be transferred to the Eastern District of North Carolina.

**SECOND DEFENSE**

The claims and factual issues raised by this action are currently pending before the North Carolina Supreme Court in the case of *Dickson v. Rucho*, No. 201PA12-2. This court should defer any consideration of this action because the constitutional claims and other factual issues raised by this action may be mooted or presented in a different posture following conclusion of the state court proceedings, including any potential appeal to the United States Supreme Court.

## THIRD DEFENSE

Plaintiffs are barred from bringing this action under the doctrine of claim preclusion.

## FOURTH DEFENSE

Plaintiffs are barred from bringing this action under the doctrine of issue preclusion.

## FIFTH DEFENSE

Answering the specific allegations of plaintiffs' complaint, defendants state as follows:

## "INTRODUCTION"

1. Defendants admit that the allegations of the complaint speak for themselves. In all other respects, defendants deny the allegations of paragraph 1.

2. Defendants admit that until recently 40 of North Carolina's 100 counties were declared covered jurisdictions pursuant to §§ 4 and 5 of the Voting Rights Act of 1965 ("VRA") and that redistricting plans impacting these counties were subject to preclearance under §5. In all other respects, defendants deny the allegations of paragraph 2.

3. Defendants deny the allegations of paragraph 3.

4. Defendants admit that the decision in *Shelby County v. Holder* speaks for itself and that following this decision none of North Carolina's counties are covered jurisdictions for purposes of § 5 of the VRA. To the extent a response is required and in all other respects, defendants deny the allegations of paragraph 4.

5. The allegations of this paragraph are argument or are legal or conclusory allegations to which no response is required. To the extent a response is required and in all other respects, defendants deny the allegations of paragraph 5.

6. Defendants admit that plaintiffs are seeking the relief described in this paragraph. In all other respects, defendants deny the allegations of paragraph 6.

## "PARTIES"

7. Defendants admit that four persons named David L. Harris, David Lee Harris, Jr., or David Leon Harris are listed in the registered voter data base maintained by the North Carolina State Board of Elections ("SBOE") as registered voters in Durham County, North Carolina, and that registration information for all four persons show them as residing in the First Congressional District. In all other respects, defendants are without knowledge or information sufficient to form a belief about the allegations of paragraph 7.

8. Defendants admit that plaintiff Christine R. Bowser is listed in the registered voter data base maintained by the SBOE as a registered voter in Mecklenburg County, North Carolina, and that plaintiff Bowser's registration information shows her as residing in the Twelfth Congressional District. In all other respects, defendants are without knowledge or information sufficient to form a belief about the allegations of paragraph 8.

9. Defendants admit that a person named Samuel Lee Love, II is listed in the registered voter data base maintained by the SBOE as a registered voter in Mecklenburg County, North Carolina, and that his registration information shows him as residing in the

3

Twelfth Congressional District. In all other respects, defendants are without knowledge or information sufficient to form a belief about the allegations of paragraph 9.

10. Defendants admit the allegations of paragraph 10.

11. Defendants admit the allegations of paragraph 11.

12. Defendants admit the allegations of paragraph 12.

## "JURISDICTION AND VENUE"

13. This paragraph contains legal conclusions to which no response is required. To the extent a response is required and in all other respects, defendants admit that the cited statutes speak for themselves.

14. This paragraph contains legal conclusions to which no response is required. To the extent a response is required and in all other respects, defendants admit that the cited statute speaks for itself.

15. Defendants admit that the cited statute speaks for itself. In all other respects, defendants deny the allegations of paragraph 15.

## "FACTUAL ALLEGATIONS
### History of Congressional District 1"

16. Defendants admit the allegations of paragraph 16.

17. Defendants admit the allegations of paragraph 17.

18. Defendants admit that the First Congressional District was redrawn by the North Carolina General Assembly in 1997, following the decisions in *Shaw v. Reno*, 509 U.S. 630 (1993) ("*Shaw I*"), and *Shaw v. Hunt*, 517 U.S. 899 (1996) ("*Shaw II*"), that the 1997 version of the First Congressional District has a black voting age population of 46.54% pursuant to the 1990 Census, that the district was precleared pursuant to § 5, and

4

that no lawsuit challenging this district under § 2 was filed. In all other respects, defendants deny the allegations of paragraph 18.

19. Defendants admit that in the 1998 and 2000 general elections, Representative Clayton received 62.24% of the vote (1998) and 66% of the vote (2000). In all other respects, defendants deny the allegations of paragraph 19.

20. Defendants admit that the General Assembly again redrew the boundaries of the 2000 version of the First Congressional District, that under the 2000 Census the First Congressional District had a BVAP of 47.76%, that the First Congressional District was precleared pursuant to § 5, and that no lawsuit challenging the 2001 version of the First Congressional District under § 2 was ever filed. In all other respects, defendants deny the allegations of paragraph 20.

21. Defendants deny the allegations of paragraph 21.

22. Defendants admit that an African-American candidate of choice prevailed in the five general elections held under the 2000 version of the First Congressional Districts, that the African-American candidate was the candidate of choice for African-American voters, that in 2002 the African-American candidate Frank Balance received 63.73% of the vote, that in 2006, Representative Butterfield was unopposed, that in 2008 Representative Butterfield defeated a white candidate and received 70.28% of the vote, and that in 2010 Representative Butterfield defeated a white candidate and received 59.31% of the vote. In all other respects, defendants deny the allegations of paragraph 22.

23. Defendants admit the allegations of paragraph 23.

5

## "History of Congressional District 12"

24. Defendants deny the allegations of paragraph 24.

25. Defendants admit the allegations of paragraph 25.

26. Defendants admit that the Twelfth Congressional District was redrawn by the North Carolina General Assembly in 1997 following the decisions in *Shaw I* and *Shaw II*, that under the 1990 Census, the 1997 version of the Twelfth Congressional District had a BVAP of 43.36%, that the district was redrawn again in 1998 in response to a district court opinion in *Cromartie v. Hunt*, 34 F.Supp. 2d 1029 (E.D.N.C. 1998), *rev'd. Hart v. Cromartie*, 526 U.S. 541 (1999) ("*Cromartie I*"), that the 1998 version had a BVAP of 32.56%, that the 1998 version was only used in the 1998 General Election, that the 1997 version was used in the 2000 General Election following the decision in *Cromartie I*, that both versions were precleared pursuant to § 5, and that no lawsuit was filed challenging either version under § 2. In all other respects, defendants deny the allegations of paragraph 26.

27. Defendants admit that in the 1998 general election Congressman Watt prevailed and received 55.95% of the vote and that in 2000 Congressman Watt prevailed and received 65% of the vote. Defendants are without knowledge or information sufficient to form a belief at the present time regarding whether the 1998 version of the Twelfth Congressional District was or was not a majority-minority coalition district. In all other respects, defendants deny the allegations of paragraph 27.

6

28.  Defendants admit that under the 2000 Census the BVAP for the 2001 version of the Twelfth Congressional District was 42.31%. In all other respects, defendants deny the allegations of paragraph 28.

29.  Defendants admit the allegations of paragraph 29.

## "2001 Redistricting"

30.  Defendants admit the allegations of paragraph 30.

31.  Defendants admit the allegations of paragraph 31.

32.  Defendants admit that Senator Rucho and Representative Lewis authorized counsel to engage Dr. Hofeller to recommend draft redistricting plans for the Congress, State Senate, and State House; that during the 2000 Redistricting Cycle Dr. Hofeller was the Redistricting Director for the Republican National Committee ("RNC"); and that during the 2010 Redistricting Cycle Dr. Hofeller was retained as a consultant to coordinate the RNC's redistricting program. In all other respects, defendants deny the allegations of paragraph 32.

33.  Defendants deny that Dr. Hofeller commenced any substantive work on redistricting maps in December 2010. Defendants admit that Dr. Hofeller did not attend public hearings or review written transcripts of hearings. In all other respects, defendants deny the allegations of paragraph 33.

34.  Defendants admit that Dr. Hofeller received support in the drawing of redistricting maps from John Morgan and Joel Raupe, that Dale Oldham provided legal advice regarding the drawing of redistricting maps, and that Mr. Oldham served as

7

redistricting counsel for the RNC and other Republican entities or committees or legislative representatives during the 2000 and 2010 redistricting cycles.

35. Defendants deny the allegations of paragraph 35.

36. Defendants admit that the joint statement issued by the Senator Rucho with Representative Lewis on July 1, 2011, speaks for itself. In all other respects, defendants deny the allegations of paragraph 36.

37. Defendants admit that the joint statement speaks for itself. In all other respects, defendants deny the allegations of paragraph 37.

38. Defendants admit that the joint statement speaks for itself. In all other respects, defendants deny the allegations of paragraph 38.

39. Defendants admit that the joint statement issued by Senator Rucho and Representative Lewis on or about July 19, 2011, speaks for itself. In all other respects, defendants deny the allegations of paragraph 39.

40. Defendants admit that the joint statement speaks for itself. In all other respects, defendants deny the allegations of paragraph 40.

41. Defendants admit that the joint statement speaks for itself. In all other respects, defendants deny the allegations of paragraph 41.

42. Defendants admit the allegations of paragraph 42.

## "Preclearance of the 2011 Congressional Plan"

43. Defendants admit that the 2011 version of the First Congressional District included counties that were covered by § 5, that the election changes involving these counties were subject to preclearance by either the United States Department of Justice

("USDOJ") or the United States District Court for the District of Columbia at the time the 2011 version of the First Congressional District was ratified, and that the cited statute speaks for itself. In all other respects, defendants deny the allegations of paragraph 43.

44. Defendants admit the allegations of paragraph 44.

45. Defendants admit that the complaint filed in *North Carolina v. Holder* speaks for itself. In all other respects, defendants deny the allegations of paragraph 45.

46. Defendants admit that the exhibits attached to the complaint in *North Carolina v. Holder* speak for themselves. In all other respect, defendants deny the allegations of paragraph 46.

47. Defendants admit the allegations of paragraph 47.

48. Defendants admit that the decision in *Shelby County v. Holder* speaks for itself and that following *Shelby County* there are no North Carolina counties that remain covered jurisdictions pursuant to §§ 4 or 5 of the VRA. In all other respects, defendants deny the allegations of paragraph 48.

### "Congressional District 1 under the 2011 Congressional Plan"

49. Defendants admit that under the 2010 Census the 2001 version of the First Congressional District had a Total Black Voting Age Population ("TBVAP") of 48.63%, and that the 2011 version has a TBVAP of 52.65%. In all other respects, defendants deny the allegations of paragraph 49.

50. Defendants deny the allegations of paragraph 50.

9

51. Defendants admit that the 2011 version of the First Congressional District includes a total of 24 counties and that five of those counties are wholly included in the district. In all other respects, defendants deny the allegations of paragraph 51.

52. Defendants admit that the length of the perimeter of the 2011 version of the First Congressional District is a matter of public record and that the cited decision speaks for itself. In all other respects, defendants deny the allegations of paragraph 52.

53. Defendants deny the allegations of paragraph 53.

54. Defendants admit that the joint statements by Senator Rucho and Representative Lewis speak for themselves. In all other respects, defendants deny the allegations of paragraph 54.

55. Defendants admit that the decision by the three-judge trial court in *Dickson v. Rucho*, No. 11CVS16896 (Wake County Superior Court) speaks for itself. In all other respects, defendants deny the allegations of paragraph 55.

56. Defendants deny the allegations of paragraph 56.

57. The allegations of this paragraph are argument or legal or conclusory allegations to which no response in required. To the extent a response is required and in all other respects, defendants deny the allegations of paragraph 57.

58. Defendants deny the allegations of paragraph 58.

59. Defendants deny the allegations of paragraph 59.

**"Congressional District 12 under the 2011 Congressional Plan"**

60. Defendants admit that under to 2010 Census the 2001 version of the Twelfth Congressional District had a TBVAP of 42.77% and that the 2011 version of the

Twelfth Congressional District has a TBVAP of 50.66%. In all other respects, defendants deny the allegations of paragraph 60.

61. The allegations of this paragraph are argument or are legal or conclusory allegations to which no response is required. To the extent a response is required, defendants admit that the dimensions and location of the 2011 Twelfth Congressional District is a matter of public record and speaks for itself. In all other respects, defendants deny the allegations of paragraph 61.

62. Defendants deny the allegations of paragraph 62.

63. Defendants admit that the decision in *Cromartie v. Hunt*, 133 F.Supp. 2d 407 (2000), *rev'd, Easley v. Cromartie*, 532 U.S. 234 (2001)("*Cromartie II*"), speaks for itself. In all other respects, defendants deny the allegations of paragraph 63.

64. Defendants deny the allegations of paragraph 64.

65. The allegations of this paragraph are argument or are legal or conclusory allegations to which no response is required. To the extent a response is required and in all other respects, defendants deny the allegations of paragraph 65.

66. The allegations of this paragraph are argument or are legal or conclusory allegations to which no response is required. To the extent a response is required, defendants admit that the election results and racial compositions of prior versions of the Twelfth Congressional Districts are matters of public record. In all other respects, defendants deny the allegations of paragraph 66.

67. The allegations of this paragraph are argument or are legal or conclusory allegations to which no response is required. To the extent a response is required,

defendants admit that there are other legal alternatives to the 2011 version of the Twelfth Congressional District. In all other respects, defendants deny the allegations of paragraph 67.

## "CAUSE OF ACTION"
### "(Violation of Equal Protection Clause of the United States Constitution)"

68. Defendants reallege and incorporate by reference all of their answers to the allegations in paragraphs 1-68 [sic] above.

69. Defendants admit the allegations of paragraph 69.

70. Defendants deny the allegations of paragraph 70.

71. Defendants deny the allegations of paragraph 71.

72. Defendants deny the allegations of paragraph 72.

73. Defendants deny the allegations of paragraph 73.

### SIXTH DEFENSE

Any allegation of the complaint not specifically admitted is denied.

### SEVENTH DEFENSE

From 1992 through 2002, African-American candidates have been elected only from the First Congressional District and the Twelfth Congressional District. With the possible exception of Congressman Watts' election in the 1998 version of the Twelfth Congressional District, since 1992 through the present the First and Twelfth Congressional Districts have either been majority-black or majority-minority coalition districts. With the possible exception of Congressman Watts' election in 1998, African-American candidates from North Carolina Congressional Districts have not been elected in districts that are majority non-Hispanic white.

## EIGHTH DEFENSE

The district lines for the 2011 First Congressional District were based upon other legitimate redistricting principles in addition to race, including the policy adopted by the General Assembly to include at least one urban area in each congressional district, equal population requirements under the one person, one vote standard, an intent to minimize the significant drop in population under the 2020 Census as were experienced by the First District under the 2010 Census, an intent to provide a strong Democratic performing district for the 2010 incumbent of the First Congressional District, and an intent to make districts that adjoin the First Congressional District more competitive for Republican candidates. These legitimate redistricting principles were not subordinated to race and race was not the predominant motive for the location of the district lines.

## NINTH DEFENSE

The 2012 General Election would not have occurred for Congress under a redistricting plan ratified by the General Assembly if that plan had not been precleared pursuant to § 5 of the VRA. Thus, at the time the congressional plan was ratified in July 2011, the State of North Carolina had a compelling state interest to enact plans that would obtain preclearance.

## TENTH DEFENSE

The 2011 version of the First Congressional District, like prior versions of the First Congressional District, was properly enacted to defend the State from potential vote dilution claims under the Fourteenth Amendment or § 2 of the VRA. The percentage of TBVAP included in this district was based upon the State's compelling interest in

13

complying with the United States Supreme Court's decisions in *Bartlett v. Strickland*, 556 U.S. 1 (2009), *Shaw I*, *Shaw II*, and *Thornburg v. Gingles*, 478 U.S. 30 (1986).

**ELEVENTH DEFENSE**

The 2011 version of the Twelfth Congressional District, like the 1997 version and the 2001 version, was based upon political criteria and designed to ensure that it would function as a very strong Democratic district. Moreover, the 2011 General Assembly also drew the Twelfth Congressional District so that districts that adjoin the Twelfth Congressional District would remain strongly performing congressional districts for Republican candidates or become more competitive for Republican candidates than prior versions enacted by Democratic-controlled General Assemblies.

WHEREFORE, defendants move the court:

1. that plaintiffs' complaint be dismissed with prejudice and that judgment be entered for the defendants on all claims;

2. that defendants be awarded their attorneys' fees and costs; and

3. that defendants be awarded such other and further relief as the Court may deem just and proper.

Respectfully submitted this 27th day of December, 2013.

                      ROY COOPER
                      ATTORNEY GENERAL OF NORTH CAROLINA

                      By: /s/ Alexander McC. Peters
                      Alexander McC. Peters
                      Senior Deputy Attorney General
                      N.C. State Bar No. 13654
                      apeters@ncdoj.gov
                      N.C. Department of Justice
                      P.O. Box 629
                      Raleigh, NC 27602
                      Telephone: (919) 716-6900
                      Facsimile: (919) 716-6763
                      *Counsel for Defendants*


                      OGLETREE, DEAKINS, NASH
                      SMOAK & STEWART, P.C.

                      /s/ Thomas A. Farr
                      Thomas A. Farr
                      N.C. State Bar No. 10871
                      Phillip J. Strach
                      N.C. State Bar No. 29456
                      thomas.farr@ogletreedeakins.com
                      phil.stach@ogletreedeakins.com
                      4208 Six Forks Road, Suite 1100
                      Raleigh, North Carolina 27609
                      Telephone: (919) 787-9700
                      Facsimile: (919) 783-9412
                      *Co-counsel for Defendants*

## CERTIFICATE OF SERVICE

I, Thomas A. Farr, hereby certify that I have this day electronically filed the foregoing **DEFENDANTS' ANSWER** with the Clerk of Court using the CM/ECF system which will provide electronic notification of the same to the following:

PERKINS COIE LLP
Marc E. Elias
700 Thirteenth Street, N.W., Suite 600
Washington, D.C. 20005-3960
MElias@perkinscoie.com
*Attorneys for Plaintiff*

POYNER SPRUILL LLP
Edwin M. Speas, Jr.
espeas@poynerspruill.com
John W. O'Hale
johale@poynerspruill.com
Carolina P. Mackie
cmackie@poynerspruill.com
301 Fayetteville St., Suite 1900
Raleigh, NC 27601
*Local Rule 83.1 Attorney for Plaintiffs*

This, the 27th day of December, 2013.

OGLETREE, DEAKINS, NASH
SMOAK & STEWART, P.C.

/s/ Thomas A. Farr
Thomas A. Farr (N.C. Bar No. 10871)
4208 Six Forks Road, Suite 1100
Raleigh, NC 27609
Telephone: 919.787.9700
Facsimile: 919.783.9412
thomas.farr@odnss.com

*Co-Counsel for Defendants*

16563028.1