IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
DURHAM DIVISION
Civil Action No. 1:13-CV-00949

| | |
|---|---|
| DAVID HARRIS; CHRISTINE BOWSER; and SAMUEL LOVE,<br><br>　　　　Plaintiffs,<br><br>v.<br><br>PATRICK MCCRORY, in his capacity as Governor of North Carolina; NORTH CAROLINA STATE BOARD OF ELECTIONS; and JOSHUA HOWARD, in his capacity as Chairman of the North Carolina State Board of Elections,<br><br>　　　　Defendants. | **DEFENDANTS' MEMORANDUM IN SUPPORT OF COURT'S CONSIDERATION OF EXPERT REPORT** |

Defendants' request that the Court take judicial notice of an expert report found in the case of *North Carolina State Conference of the NAACP v. McCrory*, Case No. 1:13-CV-00658-TDS-JEP (M.D.N.C.) ("*NAACP v. McCrory*"), submitted by Dr. Barry Burden on behalf of the plaintiffs in that action (Document 272-6) (Defendants' Trial Ex. 121). Defendants request that the Court take judicial notice only of pages 7 and 8 of the report in which Dr. Burden explains his analysis of racially polarized voting in North Carolina. This portion of Dr. Burden's report states:

> 2. Racial Polarization
>
> Senate Factors Two addresses whether voting is "racially polarized."
>
> Following the standard established by the U.S. Supreme Court in *Thornburg v. Gingles* (1986), racial polarization may be defined as

> "a consistent relationship between [the] race of the voter and the way in which the voter votes."
>
> Racial polarization in voting patterns is easily observed in North Carolina. Media exit polls from the 2012 presidential election indicated that 96% of black voters in North Carolina voted for the Democratic presidential ticket while only 31% of whites did so, a gap of 65 percentage points. Similar patterns exist in other recent presidential elections in North Carolina. The gap between blacks and whites was 60 points in 2008, 58 points in 2004, and 59 points in 2000. It is also apparent in midterm federal elections: the racial gap was 63 points in 2014. These large disparities far exceed other demographic comparisons including income, education, and sex. Moreover, because voting patterns were apparent back in 2000 and 2004, polarization is not simply an artifact of the 2008 and 2012 elections in which one of the major party candidates was black.
>
> It is important to note that racially polarized voting is nothing more than a simple reflection of partisanship. Evidence from the Democrats' primary election demonstrates this. In the 2008 Democratic presidential election in North Carolina, exit polls showed that 91% of black voters voted for Barack Obama while 37% of whites did so. This 54-point gap between blacks and whites dwarfs other demographic differences and mimics the polarization observed in general elections where partisanship is a major factor.

Dr. Burden was offered in *NAACP v. McCrory* as an expert for the North Carolina State Conference of the NAACP. Courts often cite and take judicial notice of law review articles, documents that are subject to less rigorous review than expert witness reports. *United States v. W. R. Grace*, 504 F.3d 745, 766 (9th Cir. 2007). Similarly, Dr. Burden's report also constitutes a public record that may be cited in support of defendants' legal theories. *Baker v. Barnhart*, 457 F.3f 882, 890-91 (8th Cir. 2006); *United States v. Eagleboy*, 200 F.3d 1137, 1140 (8th Cir. 1999).

Consideration of this report is important because *Harris* plaintiffs argue, contrary to the evidence presented to the North Carolina General Assembly during the redistricting

2

process and contrary to the testimony of their own witness at trial, that racially polarized voting does not exist either in North Carolina or in areas of the state in which the 2011 Congressional District 1 ("CD 1") was enacted. As will be explained in defendants' proposed findings of fact and conclusions of law, there was more than a strong basis in the legislative record for the 2011 General Assembly to conclude that racially polarized voting continued to exist in the areas encompassed by CD 1 including:

(1) the findings in *Thornburg v. Gingles*, 478 U.S. 30 (1986), which remain binding in the State of North Carolina;

(2) the history of CD 1 from 1991 and continuing through 2001;

(3) the 2003 State Senate and House plans which established majority-black or majority-minority coalition districts in most of the counties encompassed by the 2011 CD 1;

(4) two expert reports submitted during the 2011 redistricting process finding statistically significant racially polarized voting in all of the counties encompassed by the CD 1, including but not limited to Durham County;

(5) testimony to the redistricting committees of the General Assembly by counsel for the NAACP, stating that North Carolina continues to experience high levels of racially polarized voting and that majority-minority districts are still needed;

(6) testimony by lay witnesses during 2011 public hearings;

(7) election results in the CD 1 showing margins of victory for Congressman G. K. Butterfield in amounts below the number of persons by which the 2001 CD 1 was underpopulated under the 2010 Census;

(8) issues related to the impact of Congressman Butterfield's incumbency;

(9) all alternative congressional plans, each of which proposed that the 2011 CD 1 be reenacted as a majority-minority coalition district; and

(10) all alternative 2011 legislative plans, which proposed numerous majority-black or majority-minority coalition Senate or House districts in almost all of the counties encompassed by the 2011 CD 1, including but not limited to Durham County.

Thus, as explained by Congressman Butterfield at trial, no evidence supports plaintiffs' argument that racially polarized voting no longer exists in the area encompassed by the 2011 CD 1. Likewise, there is no evidence that an African American candidate could win a congressional election in northeastern North Carolina in a congressional district that was neither majority-black nor a majority-minority coalition district (in which non-Hispanic whites were a minority of the voting age population). The testimony by the NAACP's expert in *NAACP v. McCrory* confirms this and is important information that should be part of the record available to the public in this case and considered by this Court.

Respectfully submitted this 19th day of October, 2015.

NORTH CAROLINA DEPARTMENT OF JUSTICE

By: /s/ Alexander McC. Peters
Alexander McC. Peters
Senior Deputy Attorney General
N.C. State Bar No. 13654
apeters@ncdoj.gov
P.O. Box 629
Raleigh, NC 27602
Telephone: (919) 716-6900
Facsimile: (919) 716-6763
*Counsel for Defendants*

OGLETREE, DEAKINS, NASH
SMOAK & STEWART, P.C.

/s/ Thomas A. Farr
Thomas A. Farr
N.C. State Bar No. 10871
Phillip J. Strach
N.C. State Bar No. 29456
thomas.farr@ogletreedeakins.com
phil.stach@ogletreedeakins.com
4208 Six Forks Road, Suite 1100
Raleigh, North Carolina 27609
Telephone: (919) 787-9700
Facsimile: (919) 783-9412
*Co-counsel for Defendants*

# CERTIFICATE OF SERVICE

I, Thomas A. Farr, hereby certify that I have this day electronically filed the foregoing **DEFENDANTS' MEMORANDUM IN SUPPORT OF COURT'S CONSIDERATION OF EXPERT REPORT** with the Clerk of Court using the CM/ECF system which will provide electronic notification of the same to the following:

PERKINS COIE LLP
Marc E. Elias
700 Thirteenth Street, N.W., Suite 600
Washington, D.C. 20005-3960
MElias@perkinscoie.com
*Attorneys for Plaintiff*

POYNER SPRUILL LLP
Edwin M. Speas, Jr.
espeas@poynerspruill.com
John W. O'Hale
johale@poynerspruill.com
Carolina P. Mackie
cmackie@poynerspruill.com
301 Fayetteville St., Suite 1900
Raleigh, NC 27601
*Local Rule 83.1 Attorney for Plaintiffs*

This the 19th day of October, 2015.

OGLETREE, DEAKINS, NASH
SMOAK & STEWART, P.C.

/s/ Thomas A. Farr
Thomas A. Farr (N.C. Bar No. 10871)
4208 Six Forks Road, Suite 1100
Raleigh, NC 27609
Telephone: 919.787.9700
Facsimile: 919.783.9412
thomas.farr@odnss.com

*Counsel for Defendants*

22702742.1

6

Case 1:13-cv-00949-WO-JEP   Document 129   Filed 10/19/15   Page 6 of 6