NORTH CAROLINA GENERAL ASSEMBLY

HOUSE REDISTRICTING COMMITTEE

_____

TRANSCRIPT OF THE PROCEEDINGS

SESSION TWO

_____

In Raleigh, North Carolina

Thursday, February 18, 2016

Reported by Rachel L. Hammond, CVR-M

Worley Reporting

P.O. Box 99169

Raleigh, NC 27624

919-870-8070

## 2

1  (Reporter's note: Proceedings in this matter
2  began at 6:01 p.m.)
3  REP. LEWIS: Members, we're going to call the
4  House Redistricting Committee back to order. The first
5  order of business is the calling of the roll to
6  establish the members that are present. The Clerk is
7  recognized for the purpose of calling the roll.
8  CLERK: Representative Lewis.
9  REP. LEWIS: Present.
10  CLERK: Representative Jones.
11  REP. JONES: Here.
12  CLERK: Representative Brawley.
13  REP. BRAWLEY: Present.
14  CLERK: Representative Cotham.
15  REP. COTHAM: Here.
16  CLERK: Representative Davis.
17  REP. DAVIS: Here.
18  CLERK: Representative Farmer-Butterfield.
19  Representative Hager.
20  REP. HAGER: Here.
21  CLERK: Representative Hanes.
22  REP. HANES: Here.
23  CLERK: Representative Hardister.
24  Representative Hurley.
25  REP. HURLEY: Here.

## 3

1  CLERK: Representative Jackson.
2  REP. JACKSON: Here.
3  CLERK: Representative Johnson.
4  REP. JOHNSON: Here.
5  CLERK: Representative Jordan.
6  REP. JORDAN: Present.
7  CLERK: Representative McGrady.
8  REP. MCGRADY: Here.
9  CLERK: Representative Michaux.
10  REP. MICHAUX: Here.
11  CLERK: Representative Moore.
12  Representative Stam.
13  REP. STAM: Here.
14  CLERK: Representative Stevens.
15  REP. STEVENS: Here.
16  CLERK: Representative Dixon.
17  REP. HARDISTER: Mr. Chair.
18  REP. LEWIS: Representative Hardister, for what
19  purpose do you request recognition?
20  REP. HARDISTER: I just walked in. I wanted to
21  let you know I'm here.
22  REP. LEWIS: The Clerk will record
23  Representative Hardister as here.
24  Members, we're going to begin with a little bit
25  of housekeeping as we await the bill to arrive. The

## 4

1  committee will meet again tomorrow morning at 9:00 a.m.
2  to receive public comment on the Senate bill that
3  passed over to us. We will receive public comment from
4  9:00 a.m. until 10:00 a.m. The committee will then
5  begin to discuss and debate the bill that passed over
6  from the Senate today which, of course, is the 2016
7  contingent Congressional maps. So to the extent that
8  you can be here or listen in to the public comment, the
9  Chair would encourage you to do so.
10  REP. STEVENS: Mr. Chair.
11  REP. LEWIS: Representative Stevens, state your
12  purpose.
13  REP. STEVENS: Thank you. Mr. Chair, just for
14  an inquiry. Do we want to tell the committee that
15  there was a slight modification in that plan through
16  the Senate? The switching of a couple of precincts. I
17  didn't know if you wanted to make that clear.
18  REP. LEWIS: Sure, thank you, Representative.
19  The Chair will inform the body that the original bill
20  that was filed was amended in the Senate this morning.
21  The amendment consisted entirely of changing two and a
22  half precincts in Guilford County. When the original
23  plan was drawn, it was not the Chair's intent -- the
24  Chairs of the committee's intent to place the
25  residences of Representative Adams and Representative

## 5

1  Walker in the same district. That was inadvertently
2  done, however, and two precincts were changed to
3  correct that. Members will receive -- when you receive
4  your map and your stat pack tomorrow, it will reflect
5  that this is the amended plan that came from the
6  Senate.
7  Thank you for the chance to explain that,
8  Representative.
9  Members, for your planning purposes, we're
10  simply awaiting the bill to arrive from the print shop.
11  It should be just a moment.
12  Representative Moore, for what purpose does the
13  gentleman seek recognition?
14  REP. R. MOORE: I just wanted -- I heard that
15  while I was out, you did roll call. I just wanted to
16  reflect that I am here.
17  REP. LEWIS: The Clerk will record that
18  Representative Moore is present. That would be Moore
19  of Mecklenburg.
20  REP. R. MOORE: Absolutely.
21  REP. LEWIS: Members, the Chair directs that
22  the Proposed Committee Substitute for House Bill 2 be
23  distributed to the committee. The Chair would also
24  direct that any other members that are here that would
25  like a copy of the Proposed Committee Substitute one be

6

provided, and to the extent available, one be provided to the public that may be present as well.

Members, do members have copies of the Proposed Committee Substitute for House Bill 2? Is there any objection to the Proposed Committee Substitute for House Bill 2 being properly before the committee? Seeing none, so ordered.

Representative Jones, you are recognized along with Representative Hardister at your discretion to present the Proposed Committee Substitute to House Bill 2.

REP. JONES: Thank you, Mr. Chairman. Ladies and gentlemen of the committee, let me just begin as I know you're just getting the bill before you and trying to read it, but I just want to thank our staff first and foremost. They have done quite a heroic effort to put this together. I think the more we have gotten into this, we have seen just the complications that you might not expect that would be associated with this, but I just want to say that, for the record, we just have a tremendously competent and dedicated staff that has worked very hard and put in long hours. And I also wanted to thank the input that we had from the Board of Elections, Kim Strach, and the leadership team there. A lot of people worked very hard to put this together.

7

Perhaps, I know we're all just looking at this. It's hot off the press it's coming to us. Perhaps we can walk through it together here. You see House Bill 2 is a bill to be entitled An Act to Revise Procedures for the Conduct of the 2016 Primary Election to Comply with the Court Order in Harris vs. McCrory.

Section 1(a) establishes that we have a 2016 U.S. House of Representatives primary election.

Section 1(b) establishes the date of that election would be Tuesday, June 7, 2016.

Section 1(c) establishes the filing period for this special election. It would open at 12:00 noon on Wednesday, March 16. And just to make note, as I'm sure you see, that would be after, of course, the March 15 primary, but the next day. And would continue through 12:00 noon on Friday, March the 25th.

Eligibility to file, Section 1(d). You have to be affiliated with the party that you're running under for at least 75 days. A person registered as "Unaffiliated" would be ineligible to file as a candidate in a party primary election.

Section 1(e). You cannot run for two separate offices at the same time. That is current state law. The way this would work is if you are already running for an office, whether that be the state legislature or

8

another office in the state, and you are the nominee after the March 15 primary, you could file to run in the congressional primary. But as of that election on June 7, if you are the winner of that primary and you are the nominee of your party, you cannot run in the general election in two separate offices. You would have to withdraw from one. And this establishes that you would have to do that within -- no later than one week after the certification of both the primary election results.

Section 1(f) provides for return on filing fees. So anyone who has previously filed for Congress already, as you know we are already in that election, this is establishing a new congressional election. So anyone that filed and paid the filing fee would be entitled to a return on their filing fee.

Then going to Section 2 and 2(a), and it would mean for the primaries this year, there would be no second primary. We contemplated different options there. We felt like that that would by far be the simplest manner, to simply not have a second primary. It is going to be a reduced time in able to carry out this election. So just to be clear, there would be no second primary for the March 15 primary, and there would also be no second primary for the congressional

9

primary on June 7.

Section 2(b), I would have to refer to staff. I'm not sure what -- what we're repealing there. Mr. Chair, could I ask staff to explain Section 2(b)?

REP. LEWIS: The Chair would like to ask either Ms. Churchill or Ms. Tornow if they would address Section 2(b). Simply explain what is being repealed.

MS. TORNOW: Sure. Kelly Tornow with Legislative Analysis. So Section 2(b) repeals Section 2(d) of Session Law 2015-258. That is the Presidential Primary Bill, and it refers to second primaries in that session law. So it's repealing those references to second primaries.

REP. LEWIS: Okay. Please proceed, Representative Jones.

REP. JONES: Thank you, Mr. Chair.

Section 2(c) says that any election authorized by statute that is set for the date of the second primary would be placed on the ballot at the times of this special congressional primary election. And so any other election that needed to take place, I believe, a judicial vacancy, for instance, would take place at the same time.

Section 3 has to do with the nomination of electors to the Electoral College. This is, of course,

**10**

the presidential election. One presidential elector would be nominated from each congressional district as these districts existed on January 1, 2015, and two from the state at-large. As you know, we get 15. We have 13 congressional districts, and then we have the two at-large. And what that basically says is that the current congressional district map would remain in place for political parties that would be nominating their electors for president. It would be very, very difficult, if not practically impossible, for the state parties at this point to completely reorganize all of their districts in compliance with the new congressional districts. So for the purpose of electing presidential electors, the current maps would be used for that.

And then we get to Section 4.(a) I'm reading this for the first time along with you, so let's see what this says.

Mr. Chair, I think I'm going to ask if the staff would clearly explain. They can probably explain this better than I can.

REP. LEWIS: Which section, Representative Jones?

REP. JONES: Section 4. Let's let them explain Section 4. The staff is recognized.

**11**

MS. TORNOW: Kelly Tornow with Legislative Analysis, again. So Section 4 allows the State Board of Elections to issue temporary orders to implement the requirements of this act. It is the same authority that the General Assembly gave the State Board of Elections in 2015 for the presidential primary. It just allows them to be able to implement in case, you know, we forgot anything or there are administrative rules that they need to be able to manipulate in order to make this work.

REP. JONES: Okay. Thank you. Mr. Chair, if I may continue.

REP. LEWIS: Please.

REP. JONES: Section 5 clarifies that any ballots that are cast on the March 15th ballot, those ballots have already been printed, so there are going to be congressional races on those ballots. Obviously, those are null and void. This would be a new election. So this says that the State Board of Elections will not certify any ballots that are cast for Congress on the March 15 election and that those results would remain confidential.

Section 6 simply says this act is effective when it becomes law, and it applies to the 2016 election cycle unless, prior to March 16, 2016, the

**12**

United States Supreme Court reverses or stays the decision that has brought us all here.

So, Mr. Chair, I would gladly take any questions anyone may have.

REP. LEWIS: Representative Michaux.

REP. MICHAUX: Thank you, Mr. Chairman. What did I hear about second primaries? Is there something in this bill concerning second primaries, and what was it?

REP. JONES: Yes, sir, this says that there will be no second primaries for this 2016 elections, either for the March 15 election or for the special congressional primary. There would not be second primaries.

REP. MICHAUX: What about -- are you saying there's not going to be second primaries for legislative seats and others? Is that what you're telling me?

REP. JONES: That is correct, and I believe that is in Section 2.(a) that it points that out. That for all 2016 primary elections they would be determined by plurality, and no second primaries will be held during the 2016 election cycle.

REP. MICHAUX: Mr. Chairman, I -- there is a problem, and I wish somebody would explain it to me.

**13**

In the resolution that was passed this morning about what this special session was about, that resolution says, "All bills shall be excluded from introduction and consideration in the House other than bills adopting a new redistricting plans for the House of Representatives of the Congress of the United States and bills providing for the scheduling and implementation of the congressional primary election in 2016." It doesn't say anything about any other elections.

REP. LEWIS: Thank you for your inquiry, Representative. The Chair will rule that this bill doing away with the second primary is necessary to comply with the scheduling of the congressional election contingent with the rules and the proclamation from the Governor. Therefore, the matter is properly before the committee.

Further inquiries? Representative Jackson, please state your purpose.

REP. JACKSON: For an inquiry of whoever can -- wishes to try to answer.

REP. LEWIS: The gentleman may state his inquiry.

REP. JACKSON: I'm asking about Section 6, and the way I read Section 6 is that the March 15 election

14

1  will continue on even for congressional as it is
2  currently scheduled and that the United States Supreme
3  Court would have up until that day to issue a stay. So
4  basically, if I am reading this correctly, people
5  currently running for Congress would need to continue
6  to campaign and continue to expend money just in case a
7  stay got issued prior to the primary, that those
8  ballots that are being cast, have been cast, and would
9  be cast on the primary election date could actually
10 turn out to be valid and elect a congressional
11 representative; is that correct?
12     REP. LEWIS: Representative Jackson, would one
13 of our staff want to speak to that?
14     MS. TORNOW: Mr. Chair, if the stay is not
15 issued, then that is correct. The current law would
16 apply prior to March 16.
17     REP. JACKSON: Follow-up.
18     REP. LEWIS: The gentleman is recognized for a
19 follow-up.
20     REP. JACKSON: So technically, if I was a
21 congressional candidate at this time, I would not know
22 until March 15 whether the March 15 election counted
23 for me or not. And I would have to continue to expend
24 money knowing that on that date, I might be elected as
25 my party's representative to Congress or, in fact, a

15

1  stay could be issued. And I could live in the wrong
2  congressional district; is that correct?
3      REP. LEWIS: Representative Jackson, I think
4  the gentleman points out the chaos that the Chairs have
5  expressed concern with. I think the gentleman very
6  accurately points out the confusion and the uncertainty
7  that this court order has, in the opinion of the Chair,
8  caused.
9      Are there further inquiries? If not,
10 Representative Jones is recognized for a motion.
11     REP. JONES: Thank you, Mr. Chair. I move for
12 approval for the Proposed Committee Substitute for
13 House Bill 2, unfavorable to the original.
14     REP. LEWIS: Representative Jones has moved
15 that the Proposed Committee Substitute for House Bill
16 Number 2 be given a favorable report, unfavorable
17 report issued to the original bill. Those in favor --
18     REP. JACKSON: Mr. Chairman.
19     REP. LEWIS: Pardon me. Further discussion,
20 further debate. Representative Jackson.
21     REP. JACKSON: I had submitted an amendment to
22 the Proposed Committee Substitute. Is that in order
23 yet or after this vote? I just want to make sure it is
24 considered.
25     REP. LEWIS: Representative Jackson, the Chair

16

1  apologizes. The Chair was not aware that the gentleman
2  had an amendment.
3      Representative Jackson is recognized to send
4  forward an amendment. Representative -- members will
5  be distributed copies of the amendment, and then the
6  gentleman may speak on his amendment when that has
7  occurred.
8      Do all members have copies of the amendment
9  sent forward by Representative Jackson?
10     Seeing no one is saying they do not,
11 Representative Jackson sends forward amendment
12 H2-ATC-1[v.1]. It moves to amend the bill on page 1,
13 line 5, through page 2, line 28. Members have copies.
14     Representative Jackson is recognized to explain
15 his amendment.
16     REP. JACKSON: Thank you, Mr. Chairman. My
17 amendment would simply move all our primaries,
18 including the ballot, the bond proposal, the
19 presidential primary, everything until June 21, 2016.
20 Let me tell you why first I chose that day. That is
21 the date of the last presidential primary that I could
22 find on the list of primaries scheduled. I think it
23 has the potential to make North Carolina very exciting.
24 We have two races that could very well go down to the
25 wire in the presidential race. And what would be more

17

1  exciting than to have North Carolina choose who would
2  be the Republican or the Democratic nominee for
3  President?
4      It also has a lot of other benefits. I heard
5  the Elections Chair this morning -- or this afternoon
6  talk about the savings and how it wouldn't be $9.5 or
7  $10 million, but it would be a substantial cost
8  savings. I looked at the Wake County Board of
9  Elections website, and they advertise that as a
10 precinct official you can make $270 an election. So if
11 we assume we save that, we save six to eight precinct
12 officials in every precinct in Wake County, by my rough
13 math, that is over $300,000. Now, if we save that
14 across the State, that becomes a pretty substantial
15 savings.
16     We are proceeding today as if we know what is
17 going to happen in the federal courts, but the truth is
18 we don't know this three-judge panel in Greensboro, if
19 they're going to take two weeks or two months to
20 approve these maps that we're getting ready to put out.
21 And wouldn't it be terrible if it took them long enough
22 that we had to come back here another time and schedule
23 another primary. So I just picked the date that we
24 could pick farthest off and get this all accomplished.
25 I think it is the safest thing to do. I think it will

18

1   save the State money. And I think it has the potential
2   to turn out to be a very exciting election for us, and
3   I urge everyone's support.
4       REP. LEWIS: The Chair is going to recognize
5   the bill's sponsor, Representative Jones, and then move
6   to the members of the committee that the Chair has
7   recognized.
8       Representative Jones.
9       REP. JONES: Thank you, Mr. Chairman. I
10  appreciate Representative Jackson and his amendment.
11  Members, I would ask that you would defeat this
12  amendment. First of all, obviously there has already
13  been a tremendous disruption to our congressional
14  elections, but there's no reason to disrupt every
15  election in North Carolina because of it. So that is a
16  primary reason that we shouldn't do it. As far as
17  saving the state money, I believe we heard testimony
18  from the Director of the State Board of Elections at
19  our redistricting meeting earlier today that that would
20  not be the case. There has already been extensive
21  amounts of money spent on the ballots that have already
22  been printed and made up for March the 15th. So there
23  is certainly no reason to disrupt all of the primary
24  elections in North Carolina this year. And so I would
25  ask, please, that you would defeat this amendment.

19

1       REP. LEWIS: Representative Stam, for what
2   purpose does the gentleman seek recognition?
3       REP. STAM: To speak on the amendment.
4       REP. LEWIS: The gentleman has the floor to
5   debate the amendment.
6       REP. STAM: I would ask you to defeat the
7   amendment. I don't know, it might save the State a
8   little bit of money, but it will cost the hundreds of
9   candidates bucket-loads of money who have already
10  started their campaigns. They've worked backwards from
11  March 15 on their spending plans. They've spent a lot
12  of money. They've organized. Emotionally they're
13  ready for it to be over in three weeks or whatever it
14  is. And this would be a grave disservice to all of the
15  candidates for Council of State, State House, county
16  commissioners, some school boards. It just would be
17  horrible for them. I mean, it is bad enough for our
18  congressional candidates that this has happened, but to
19  do it to everybody would just be a bad thing.
20      REP. LEWIS: Representative McGrady, for what
21  purpose does the gentleman seek recognition?
22      REP. MCGRADY: To speak on the bill.
23      REP. LEWIS: The gentleman has the floor to
24  debate the amendment.
25      REP. MCGRADY: I agree with my colleague who

20

1   just spoke. I think we need to remember why we set
2   this primary date, and that was related to the
3   presidential primary. To now sort of look at the races
4   and say, well let's put us last because that would be
5   better. There is just a massive amount of money that
6   is involved in elections it's not just local
7   governments. I am particularly sensitive to the local
8   governments' concern having served as a County
9   Commissioner and recognizing that, but, you know, I
10  guess our state slogan is "First in Flight." And for
11  me, this would be "First in Fright." And I just would
12  ask my colleagues to oppose it.
13      REP. LEWIS: Representative Hager, for what
14  purpose does the gentleman seek recognition?
15      REP. HAGER: Thank you, Mr. Chairman, to speak
16  on the amendment.
17      REP. LEWIS: The gentleman has the floor to
18  debate the amendment.
19      REP. HAGER: Thank you, Mr. Speaker. It will
20  be no surprise that I ask you to vote no on this
21  amendment. And the reason is maybe a little different,
22  and maybe the same as what Representative Jones said,
23  you know. And I differ a little bit on Representative
24  Jackson. He's saying it will save money. I think
25  we've heard today from Ms. Strach that the money was

21

1   not in the labor. It was actually in the ballot
2   coding. The ballot coding for more people on the
3   ballot in June will actually cost more money than you
4   would offset and you would save by the labor piece. So
5   I doubt very seriously this will save the state money.
6   Actually, it may end up costing us money. So in that
7   case, I would ask the representatives in the room to
8   vote against the amendment.
9       REP. LEWIS: Further discussion, further debate
10  on the amendment sent forth by Representative Jackson?
11      Seeing none, those favoring the amendment sent
12  forward by the gentleman from Wake will vote "aye,"
13  those opposed will vote "no."
14      REP. MICHAUX: Mr. Chairman.
15      REP. LEWIS: The Chair apologizes.
16  Representative Michaux, please state your purpose.
17      REP. MICHAUX: Is a record being made on this?
18      REP. LEWIS: Yes, sir. The Chair was about to
19  announce that it will be a recorded vote.
20      Further discussion, further debate?
21      The question before the committee is the
22  adoption of the amendment sent forward by the gentleman
23  from Wake, Representative Jackson. Those favoring the
24  adoption will vote "aye," those opposed will vote "no."
25  The clerk will call the roll.

**22**

1  CLERK: Representative Lewis.
2  REP. LEWIS: No.
3  CLERK: Representative Lewis, no.
4  Representative Jones.
5  REP. JONES: No.
6  CLERK: Representative Jones, no.
7  Representative Brawley.
8  REP. BRAWLEY: No.
9  CLERK: Representative Brawley, no.
10  Representative Cotham.
11  REP. COTHAM: Aye.
12  CLERK: Representative Cotham, aye.
13  Representative Davis.
14  REP. DAVIS: No.
15  CLERK: Representative Davis, no.
16  Representative Farmer-Butterfield.
17  REP. FARMER-BUTTERFIELD: Aye.
18  CLERK: Farmer-Butterfield, aye.
19  Representative Hager.
20  REP. HAGER: No.
21  CLERK: Representative Hager, no.
22  Representative Hanes.
23  REP. HANES: Aye.
24  CLERK: Hanes, aye.
25  Representative Hardister.

**23**

1  REP. HARDISTER: No.
2  CLERK: Hardister, no.
3  Representative Hurley.
4  REP. HURLEY: No.
5  CLERK: Hurley, no.
6  Representative Jackson.
7  REP. JACKSON: Yes.
8  CLERK: Representative Jackson, aye.
9  Representative Johnson.
10  REP. JOHNSON: No.
11  CLERK: Johnson, no.
12  Representative Jordan.
13  REP. JORDAN: Nope.
14  CLERK: Representative Jordan, no.
15  Representative McGrady.
16  REP. MCGRADY: No.
17  CLERK: McGrady, no.
18  Representative Michaux.
19  REP. MICHAUX: Aye.
20  CLERK: Michaux, aye.
21  Representative Moore.
22  REP. R. MOORE: Aye.
23  CLERK: Moore, aye.
24  Representative Stam.
25  REP. STAM: No.

**24**

1  CLERK: Stam, no.
2  Representative Stevens.
3  REP. STEVENS: No.
4  CLERK: Stevens, no.
5  REP. LEWIS: With 6 members voting in the
6  affirmative and 12 members voting in the negative, the
7  amendment is not adopted.
8  Is there further discussion or debate?
9  Seeing none, the question before the committee
10  is the motion by Representative Jones to give the
11  Proposed Committee Substitute for House Bill Number 2 a
12  favorable report and an unfavorable report be given to
13  the original House Bill Number 2. Those favoring the
14  motion will vote "aye," those opposed will vote "no."
15  The Clerk will call the roll.
16  CLERK: Representative Lewis.
17  REP. LEWIS: Aye.
18  CLERK: Lewis, aye.
19  Representative Jones.
20  REP. JONES: Aye.
21  CLERK: Jones, aye.
22  Representative Brawley.
23  REP. BRAWLEY: Aye.
24  CLERK: Brawley, aye.
25  Representative Cotham.

**25**

1  REP. COTHAM: No.
2  CLERK: Cotham, no.
3  Representative Davis.
4  REP. DAVIS: Yes.
5  CLERK: Davis, aye.
6  Representative Farmer-Butterfield.
7  REP. FARMER-BUTTERFIELD: No.
8  CLERK: Farmer-Butterfield, no.
9  Representative Hager.
10  REP. HAGER: Aye.
11  CLERK: Hager, aye.
12  Representative Hanes.
13  REP. HANES: No.
14  CLERK: Hanes, no.
15  Representative Hardister.
16  REP. HARDISTER: Aye.
17  CLERK: Hardister, aye.
18  Representative Hurley.
19  REP. HURLEY: Aye.
20  CLERK: Hurley, aye.
21  Representative Jackson.
22  REP. JACKSON: No.
23  CLERK: Representative Jackson, no.
24  Representative Johnson.
25  REP. JOHNSON: Aye.

26

1  CLERK: Johnson, aye.
2  Representative Jordan.
3  REP. JORDAN: Aye.
4  CLERK: Jordan, aye.
5  Representative McGrady.
6  REP. MCGRADY: Aye.
7  CLERK: McGrady, aye.
8  Representative Michaux.
9  REP. MICHAUX: No.
10 CLERK: Michaux, no.
11 Representative Moore.
12 REP. R. MOORE: Nay.
13 CLERK: Moore, nay.
14 Representative Stam.
15 REP. STAM: Aye.
16 CLERK: Stam, aye.
17 Representative Stevens.
18 REP. STEVENS: Aye.
19 REP. LEWIS: With 12 members voting in the
20 affirmative and 6 members in the negative, the motion
21 is adopted. There being no further -- the bill will be
22 reported favorably.
23 There being no further business before the
24 committee, this committee does stand adjourned.
25 (THE PROCEEDINGS IN THIS MATTER ADJOURNED AT 6:33 P.M.)

27

STATE OF NORTH CAROLINA
COUNTY OF WAKE
    CERTIFICATE
  I, Rachel L. Hammond, a Notary Public in and for the State of North Carolina duly commissioned and authorized to administer oaths and to take and certify hearings, do hereby certify that on February 18, 2016, this hearing was held before me at the time and place aforesaid, that all parties were present as represented, and that the record as set forth in the preceding 27 pages represents a true and accurate transcript of the proceedings to the best of my ability and understanding.
  IN WITNESS WHEREOF, I have hereto set my hand, this the 25th day of February, 2016.

    _____
        Notary Public

    Rachel L. Hammond
    Notary Number
    201126500152