NORTH CAROLINA GENERAL ASSEMBLY

SENATE REDISTRICTING COMMITTEE

---

TRANSCRIPT OF THE PROCEEDINGS

---

In Raleigh, North Carolina

Friday, February 19, 2016

Reported by Robbie W. Worley

Worley Reporting

P.O. Box 99169

Raleigh, NC 27624

919-870-8070

## Page 2

1  (Reporter's note: Proceedings in this
2  matter began at 10:06 a.m.)
3  SEN. RUCHO: Members of the committee, we
4  are here to take up House Bill Number 2, which is
5  2016 US House of Representatives Primary. Now,
6  this bill is required of us to take action because
7  we have not heard from the Supreme Court yet, and
8  to comply with the federal court's ruling, we need
9  to be prepared to have an election for the US House
10 of Representatives under the new maps -- the new
11 map that was drawn. And today, Representative
12 Jones will be delighted to explain to you House
13 Bill 2. We probably will have an amendment to it,
14 but Representative Jones, welcome. Nice to have
15 you here.
16 REP. JONES: Thank you very much, Mr.
17 Chairman. Members of the Senate committee. It is
18 always a pleasure to be with you.
19 We have before us today House Bill 2, and
20 I would be pleased to walk you through it, section
21 by section, briefly. This has to do with our 2016
22 Congressional primary. Section 1(a) establishes
23 that primary election. 1(b) establishes the
24 primary election date as Tuesday, June 7, 2016.
25 Section 1(c) establishes the filing period, which

## Page 3

1  would begin Wednesday, March 16th. I would point
2  out, of course, that that would be the day after
3  the March 15th primary and would close at 12 noon
4  on Friday, March 25th.
5  Section 1(d) speaks of the eligibility to
6  file. You must be affiliated with the political
7  party with which you are running for at least 75
8  days. Section (e) speaks to the situation of
9  running for two offices at the same time. State
10 law does not allow that in this particular election
11 because we are having a later congressional
12 primary. This would say that if you are a current
13 nominee for your party, for any office in the
14 state, you would have the opportunity to file and
15 run for Congress. However, if you win that
16 Congressional primary and you become the
17 Congressional nominee, you would be required to
18 withdraw from one of those offices within a week.
19 So you could not run for two separate offices at
20 the same time in the general election.
21 Section 1(f) returns the filing fee for
22 any candidate that had filed previously to run for
23 Congress in the current March 15th election that
24 would be replaced with this June 7th election,
25 would return the filing fee to those candidates.

## Page 4

1  Section 2(a) says that there would be no
2  second primary for either the March 15th election
3  or the June 7th election this year. That certainly
4  makes things much simpler as far as the
5  administration for the Board of Elections with this
6  condensed timeline. It also takes into account
7  that generally the poll books would be closed after
8  such an election. In this case, they will remain
9  open because of the Congressional primary.
10 And if you didn't do this, you could
11 certainly have the case, whereas now, in order to
12 vote in a second primary, you must be eligible to
13 vote in a first primary. This takes care of that
14 because you wouldn't want people necessarily to
15 vote in the second primary that could not vote in
16 the first. People could change parties to run --
17 to vote in the second primary and so forth. So
18 this does away with the second primary only for the
19 2016 primary elections for both March 15th and June
20 7th elections.
21 Section 2(b) repeals language that has to
22 do with secondary primary for this election cycle.
23 Section 2(c) says that any election that
24 is authorized by statute that is set for the date
25 of the second primary would be on the ballot at the

## Page 5

1  same time of this special Congressional primary
2  election on June 7th.
3  Section 3, there is going to be an
4  amendment offered, a friendly amendment which we
5  certainly support, that would eliminate section 3,
6  so we'll skip that for now, unless anyone has
7  questions. And I'm sure they will come up at the
8  time of the amendment.
9  Section 4 speaks of the temporary orders
10 to accommodate the scheduling of the primary. The
11 State Board of Elections may issue such temporary
12 orders as necessary. The rest of Section 4 just
13 describes what those orders are. They are not
14 rules; they do expire at the end of this election,
15 and order is defined in Section 4(d).
16 Section 5 says that any ballots that are
17 cast in the current election, the March 15th
18 Congressional primary that has already started,
19 because we are replacing it with a brand-new
20 election, any of those votes that are cast on the
21 March 15th ballot for Congress, the State Board of
22 Elections would be directed not to certify that
23 election, and those results would remain
24 confidential, would not be a public record.
25 Section 6 makes this Act effective when

6

it becomes law, it applies only to the 2016 election cycle unless prior to March 16th, the United States Supreme Court reverses or stays the decision that has brought us all here this week.

So, ladies and gentlemen, I'm certainly happy to answer any questions you may have.

SEN. RUCHO: Members of the committee, Representative, you did a wonderful job in explaining this. We're going to go point by point. Anybody that has a question, please direct it and give us an idea where you are talking from as far as the bill is concerned. Then, just as a reminder, all of these extenuating and extra steps that we're having to do in the election process was a means of trying to put some order and reduce the uncertainty of the primary election as a result of having to meet the federal orders dealing with this redistricting issue.

All right. I've got Senator Blue as the first person.

SEN. BLUE: Thank you, Mr. Chairman. Representative Jones, the revision on Section 1(c), the no running for two offices, the mechanics of withdrawal from the office that you've been nominated to, the provisions for filling in that

7

vacant nomination will be the same as it exists under the current law?

REP. JONES: Thank you, Senator Blue; that is correct.

SEN. BLUE: One other question.

SEN. RUCHO: Follow-up.

SEN. BLUE: And that relates to the provision on Section 4(a), Temporary Orders. All of the election laws relate to, in effect, the 2016 Congressional primaries. This does not contemplate that the State Board can basically change any election law they want to under the pretext that it affects the 2016 Congressional race. I'm saying all election laws affect all races, even the aspects of it not pertaining directly to the Congressional primary.

But what this contemplates is just if there is some election law that conflicts with the conduct of this primary for Congressional races that would be eligible to be changed by the State Board, not willy-nilly any election law.

REP. JONES: That is correct, Senator Blue.

SEN. RUCHO: Okay. I've got Senator McKissick. Good morning, Mr. McKissick. Good to

8

see you here today.

SEN. MCKISSICK: Always good to see you, Mr. Chair. A couple of questions. In terms of the process here for reviewing ballots to determine how someone voted, I know that over in Durham County, we have one ballot that everybody is on. So is -- I take it what is going to have to happen now, rather than being read by computers, for those ballots that have already been cast, someone would have to manually go through there and eliminate the votes for people that were for Congressional races and then count the votes that were otherwise on that ballot. Is that the mechanics in terms of the way it's going to be done? And perhaps I should ask someone from the State Board of Elections that question, but I'm just trying to understand how they will go about doing it.

REP. JONES: Senator McKissick, I would be happy just to --

SEN. MCKISSICK: Sure.

REP. JONES: -- based on my understanding that they are simply directed not to count those votes. But certainly not to certify those results. If those machines, I suppose, do count all the votes like I know our machines do, those would be

9

sealed as confidential, would not be made public record and would not be certified.

SEN. RUCHO: I will ask Ms. Strach to come forward and please identify yourself. Representative Jones explained it, but we will give Senator McKissick an opportunity to -- please identify yourself.

MS. STRACH: Kim Strach, State Board of Elections. And I can explain that. Because it is electronic in the voting equipment, what we can do is hide those results. So it will be counted, but they will be hidden so that they will not be able to be seen.

SEN. MCKISSICK: I see.

MS. STRACH: So that's how it -- the whole ballot will be counted by the machine, but those races will be hidden so that you won't be able to see those results.

SEN. MCKISSICK: Got it.

SEN. RUCHO: Did that answer your question?

SEN. MCKISSICK: Yes, it does. I guess the other thing I was curious about is the cost of doing this particular additional primary. I mean, how much is it estimated to cost us, and is there

### Page 10

any increase of what we already paid? Obviously there would have been potentially some runoffs that would have occurred but not uniformly across the entire state. So do we know what the additional cost is going to be, and are we going to be trying to hold harmless these counties that are absorbing additional costs?

SEN. RUCHO: Ms. Strach, would you help us with that cost?

MS. STRACH: Yes. All counties should have budgeted for a second primary because they have to anticipate not only could they have a second primary but that second primary could be a statewide primary. So they will have budgeted for that.

Now, there may be other costs that they would have to incur as well but they do have budgeted for a second primary. Without having the second primary, this would be taking that place. Hopefully they will have enough budget to do that.

SEN. MCKISSICK: Thank you, and I think there was one last question I had.

SEN. RUCHO: Follow-up.

SEN. MCKISSICK: Yeah. I gather when it comes to this Section 3, I understand there is an

### Page 11

amendment to eliminate that completely. Okay? That's going to eliminate completely -- it will answer the questions I would have had about that particular provision. Thank you.

SEN. RUCHO: Okay. You know, just to go along with Senator McKissick's question, the cost to the State, I guess, is pretty clear, but the untold cost of all the members or all the folks that are running for candidates and spending all that money, and unfortunately in districts that had to be changed because of the court case, you know, that will be lost forever, plus all the time and energy. So it is a -- the voters have been disenfranchised because of this action, and what we're trying to do is help minimize that disenfranchisement.

Senator Clark?

SEN. CLARK: Thank you, Mr. Chairman. My question relates to page 1, line 17. In where we're reducing the party affiliation duration requirement from 90 days to 75 days, why is that required?

SEN. RUCHO: Ms. Strach, can you help us with that question, please?

And you might want to repeat that again,

### Page 12

Senator Clark.

SEN. CLARK: Line 17 of the bill, on the first page, the party affiliation duration requirement has been reduced from 90 days down to 75 days. Why is that?

SEN. RUCHO: Ms. Strach?

MS. STRACH: That is not a requirement; that is just -- that is definitely a policy decision for you-all. That's not our -- a requirement.

SEN. RUCHO: That was -- that apparently is done to try to make it more available for candidates or people that want to participate in the election that can do that.

MS. STRACH: And it is consistent with what was done when we moved -- the primary was moved to March 15th. This was also the same timeline as well. It was moved down from 90 to 75 as well. So this is consistent with that.

SEN. RUCHO: Senator Hise.

SEN. HISE: Thank you, Mr. Chairman. The question I want to ask is in regards to the courts issuing a stay. We're sitting here on Friday morning, still haven't heard anything. And as I read this bill, at any time there is a stay, we

### Page 13

automatically go back to the previous issues. So I guess what I'm asking is, if someone has an absentee ballot now or even has an absentee ballot after we leave here, they should mark that ballot as they would choose to vote, even though we might be saying it won't get counted because if anytime there is a stay, even two weeks from now, it suddenly will count. So, I'm trying to get a handle on what is this flexibility on when it counts and when it doesn't and what if we get a ruling or stay, say, even after March or after we have programmed these machines to say don't count the ballots. If we get a stay at that point, how do we deal with those?

SEN. RUCHO: Senator Hise, Ms. Churchill has a comment to help answer your question.

MS. ERIKA CHURCHILL (STAFF): Mr. Chairman, I just want to clarify that the discussion is, if the stay occurs prior to March 15th, 2016.

SEN. HISE: Well, this is kind of maybe a rhetorical question, but up until the day of the primary, anybody that gets that ballot or anybody who comes in on election day should vote for Congress as they would have voted for Congress for

### Page 14

those seats with the potential of any stay out there. But if it comes after that date, once we say we're not counting it, we're not counting it.

SEN. RUCHO: Ms. Churchill.

MS. CHURCHILL: So, Senator Hise, the language in section 6 of the bill on page 2, lines 26 through 30, does specifically kind of come down to this. If the stay or the reversal occurs prior to March 16, 2015, which would be on or before -- 2016, sorry. On or before the primary date, this bill becomes null and void, which means the March 15th primary would occur as it is currently constituted today without this bill being enacted, which kind of comes around to those ballots would be counted as cast between now and March 15th if the stay or the reversal occurs prior to March 16th.

SEN. RUCHO: Representative Jones?

REP. JONES: Senator Hise, I would agree that absolutely people need to cast their ballot with the assumption that those ballots absolutely could count. As Ms. Strach said earlier, they will be counted, they will just be hidden and kept confidential under this law, assuming there is no stay. But if there is a stay, they are on the

### Page 15

ballot, they will be counted, and people definitely need to vote.

SEN. RUCHO: Senator Hise, you okay with that?

SEN. HISE: Yes.

SEN. RUCHO: All right. And just to make that clear, anybody that receives a ballot should be voting in that Congressional race, because otherwise, if you don't, then you've lost the opportunity to vote, and therefore, you will be disenfranchised. I've got Senator Blue.

SEN. BLUE: One last question, Representative Jones. I'm intrigued by this idea that counties have already budgeted for the second primary, and it's something that I've been interested in a long time. Would you consider an amendment to permanently ban second primaries, a friendly amendment?

REP. JONES: Thank you for that question, and with all due respect, Senator Blue, I believe we are here just to address the 2016 election cycle. That's the purpose of this special session. So, no, we could not do that.

SEN. RUCHO: Thank you, Representative Jones.

### Page 16

All right. I've got Senator Ford.

SEN. FORD: Quick question, Mr. Chairman, for the State Board of Elections as it relates to what is their plan to communicate what we just articulated to the voters of North Carolina about that potential of a stay and if not a stay, then they need to continue to cast their ballots as normal. I think there is a lot of information out there and I would be real curious, if you would allow it, for the State Board to educate us on how they are going to educate our citizens on how to conduct themselves during this election.

SEN. RUCHO: Ms. Strach, would you help us with that so Senator Ford can be enlightened?

MS. STRACH: Absolutely. That's what we try to do as soon as we have this information. We have been trying to get that message out because we don't know what will happen. We want to make sure, since people are getting ballots that have these races on them, we do not want people to be confused. That is why we're not trying to tell people not to vote for certain races because they may not count. We want voters to vote their entire ballot, and then we will -- we will figure out what needs to be counted and what doesn't need to be

### Page 17

counted, so that we have -- we try to lessen voter confusion. But that has been our message and that's the message that we're going to continue to try to get out.

SEN. RUCHO: Senator Ford.

SEN. FORD: Follow-up. With a little bit more clarity and a little bit more detail, how?

SEN. RUCHO: I think she explained it pretty clearly. Thank you.

Senator Smith?

SEN. SMITH: Thank you, Mr. Chairman. Do we know how many races are going to be affected in the state by not having the second primary? In other words, how many have more than two people filing?

SEN. RUCHO: We can get you that answer. Ms. Strach?

MS. STRACH: There are 13 potential races, and I actually have those if you are interested in those. There are 13 races that have more than two candidates.

SEN. RUCHO: Do you, by chance, have a list of those, please?

MS. STRACH: And I do need to clarify that. There are 13 at the state level. There

18

1 could be county races, local races that have
2 primaries. There are 13 at the state level.
3     SEN. SMITH: So we wouldn't have a way of
4 knowing -- follow-up, excuse me.
5     SEN. RUCHO: Follow-up.
6     SEN. SMITH: We wouldn't have a way of
7 knowing what the county races -- how this would
8 affect -- how many this would affect?
9     SEN. RUCHO: I guess you would need to
10 probably check that out with the county level
11 Boards of Elections. Okay?
12     Ms. Strach, do you have anything you want
13 to add?
14     MS. STRACH: Did you want those or
15 just --
16     SEN. RUCHO: Would anyone like to hear
17 those races on the statewide -- okay, please go
18 ahead.
19     MS. STRACH: It's NC Commissioner of
20 Insurance, Republican; NC Governor, Republican; NC
21 House of Representatives, District 6, Republican;
22 NC House, District 28, Republican; NC House,
23 District 33, Democrat; NC House, District 44,
24 Republican; NC House, District 81, Republican; NC
25 House, District 91, Republican; Lieutenant

19

1 Governor, Democrat; State Senate, 31, Republican;
2 State Senate, 36, Republican; State Senate, 48,
3 Republican; and Superintendent of Public
4 Instruction, Republican.
5     SEN. RUCHO: Thank you. Any questions on
6 that specific point? Okay. Senator McKissick?
7     SEN. MCKISSICK: I was wondering if any
8 thought or consideration had been given to rather
9 than keeping all of this kind of in a state of flux
10 up until March 15th, to just say that if the Court
11 does not issue a stay five days from the effective
12 day of this bill, that we have the new plans in
13 place: the new Congressional districts in place,
14 the filing periods in place. I hate to see
15 somebody running having to spend money continually
16 in one of these districts and then finding out, say
17 March 10th or March 12th that there is now a stay
18 or that the Supreme Court has reversed something.
19 I mean, why not just go ahead and say that if it's
20 not done within five or seven days of the date the
21 bill is passed or ratified or something, that this
22 is what we're doing. I mean, it would seem to
23 eliminate a lot of the chaos and confusion for the
24 candidates and for voters. I mean, just come up
25 with whatever that arbitrary period might be, but

20

1 say five, seven days out, that's it. If it hasn't
2 happened by then, then let's just say we're going
3 with this new district and new plans and begin the
4 process. Because otherwise, it seems to be
5 potentially chaotic and expensive for candidates.
6 Chaotic for voters, expensive for candidates.
7     SEN. RUCHO: Senator McKissick, that
8 discussion can be had for a future time. We're
9 going ahead with the way the law presently is and
10 how we are trying to expedite it based on previous
11 times. You can talk about during the short session
12 or something of that sort, but the fact of the
13 matter is, what we are doing is complying with what
14 the Court wanted us to do and then taking the
15 necessary steps so that we can try to eliminate the
16 uncertainty and the disenfranchisement of the
17 voters. So that's why we're going forward with
18 this bill.
19     Senator Blue.
20     SEN. BLUE: One last one that is
21 precipitated by Ms. Strach's answer of the 13 state
22 races or races affecting state candidates. In the
23 uncertainty at a local level on County Commission
24 races and others, if -- if we have to -- and I hate
25 second primaries, but if we have to conduct this

21

1 primary in June -- on June 7th and it's statewide,
2 every precinct will be open because you've got all
3 13 districts. There is no monetary reason for not
4 piggybacking on the second primary for these folk
5 who have organized their campaigns, some of them,
6 in anticipation of the second primary, is there?
7     REP. JONES: May I answer?
8     SEN. BLUE: Please do.
9     REP. JONES: Thank you. Thank you,
10 Senator Blue. We did contemplate different options
11 as far as the second primary, and one option would
12 have been to have the second primary for the March
13 15th election on June 7th with the Congressional
14 primary. However, in looking at all of the parts
15 of that, just the complexity for the Board of
16 Elections and the fact that the poll books would
17 remain open and that would perhaps wreak some havoc
18 in these second primaries. People being -- that
19 would not have been eligible to vote in the first
20 primary would have been able to vote in the second
21 primary. We tried to look at all the options, and
22 we felt like this was the best one. So we elected
23 to discontinue the second primary for this primary
24 cycle.
25     SEN. RUCHO: Okay. Any additional

## Page 22

questions? Senator McKissick?

SEN. MCKISSICK: And this is a question that is really raised by Senator Bryant. I think she is not a part of the committee. And that is this: If we could perhaps have Erika Churchill or Kelly explain to us what the effectiveness is of this bill, what it changes, effectively, and how it changes it. Because I think she had concerns similar along the lines that I had about what procedurally will happen if the Court issues a -- we know what will happen if the Court issues a stay. I guess the other thing is, what will happen at the state court level if they don't approve the plans. All of these contingencies.

I mean, and perhaps, Mr. Chair, if you want to recognize Senator Bryant for asking the question, I think that -- I know yesterday we did allow some non-committee members to ask questions, but I think Senator Bryant specifically had some questions about this.

SEN. RUCHO: That probably is not accurate statement. We allowed them to talk.

SEN. MCKISSICK: That's what I was saying, that you did. Because I may not have expressed her thoughts as well as she might.

## Page 23

SEN. RUCHO: One second. Just so that everyone knows, Senator Apodaca will send a message over to the session and we will move that start time up to 11:30, so, members of the committee, there is no reason to leave until we can finish our business.

Staff, within your knowledge to try to explain what the changes have meant to the existing law and what precedent has been established in the past as to why we went ahead and made these changes in an effort to try to simplify the process and minimize the confusion, which one would like to have that opportunity?

MS. KELLY TURNER (STAFF): Kelly Turner with Legislative Analysis. So this bill would in effect -- if the stay is not granted before -- prior to March 16, 206, would move the primary date to June 7th for the US House of Representatives primary, would change the filing date accordingly, would eliminate second primaries. Otherwise, Session Law 2015-258, which moved the primary to March 15th, would still be in effect.

SEN. RUCHO: Senator McKissick, quick follow-up.

SEN. MCKISSICK: What would happen if the

## Page 24

Middle District Court didn't approve the plan or did not feel that it was sufficient or took actions that were inconsistent with what is being proposed here?

SEN. RUCHO: Ms. Churchill?

MS. CHURCHILL: Senator McKissick, I think it is hard to anticipate if this is going to go back to the courts, what the courts would say, to understand what the General Assembly or what the voters would have in front of them until you actually know what the courts say. So it's kind of hard to answer that question because we don't know what is going to happen post-enactment and post-adjournment. We don't know what the courts are going to do, if anything. So you can't anticipate what is going to come.

SEN. RUCHO: The courts will have to answer that question to give us direction.

SEN. MCKISSICK: I understand. I think we could add certainty if we just pushed that date out seven to ten days and know what is going to happen is going to happen.

SEN. RUCHO: Okay. Any additional questions? Senator Hise?

SEN. HISE: An amendment.

## Page 25

SEN. RUCHO: Senator Hise has an amendment. Has it been passed out?

UNIDENTIFIED FEMALE VOICE: Yes.

SEN. RUCHO: Excuse me. Senator Brown?

SEN. BROWN: Just a quick comment, I guess, more than a question. You know, when early voting starts, you know, the existing ticket is what people will be voting on. And I think that's important that that message gets out. And I am concerned that because of this that some people are going to say, "Well, why should I vote for a Congressional race when things are going to change?" Well, that might not be the case. So it is important that during early voting that people, you know, check their ballot and vote as if -- they want to vote and those ballots be available to be counted if they should be. So that message does need to be gotten out if possible.

SEN. RUCHO: Okay. Senator Hise, you have an opportunity here to explain your amendment.

SEN. HISE: Thank you, Mr. Chairman. This will simply eliminate Section 3, which will leave under current law the assignment of electable delegates to the rules as they exist.

SEN. RUCHO: Okay. Representative Jones,

## 26

you have a comment?

REP. JONES: Mr. Chair, the bill sponsor supports this amendment.

SEN. RUCHO: Okay. Staff, if you will be kind enough, would someone explain the present electors law so that we can understand it, and then in essence that will help us better judge this.

UNIDENTIFIED FEMALE STAFF MEMBER: Thank you, Mr. Chair. I would caveat this by saying, unfortunately, we are not Electoral College experts. I'm being helped by Bob Joyce at the School of Government. He has a great blog post on this, so I'll just sort of summarize his -- his thoughts. So, first, each party in a statewide convention nominates 15 electors, one from each Congressional district and two at-large, and then two alternates. And unaffiliated candidates nominate their own.

The names of those nominated electors are filed with the Secretary of State, then the general election is held. The name of the electors, of course, do not appear on the ballot. Let's see. And then after that, the State Board of Election gets the election results, and those results are certified. The Secretary of State then notifies

## 27

the governor of the names of those electors to the electoral college and sends the electors -- okay, I'm going to skip that part.

The governor issues a proclamation, setting forth the name of those electors, and then there are procedures for how the electors are chosen and the use of the alternates in filling vacancies. And then at the meeting of the electors, each elector votes separately for the president and the vice president. After voting, the electors count the votes and make out certificates and then count the votes of all the electors.

SEN. RUCHO: Okay. Members of the committee, in essence, and I spoke with Senator Blue earlier about this issue and he -- it could affect both parties similarly. So by eliminating any language on this, it is the opinion of our attorneys that whatever happens in regards to the districts, whatever district the candidates run in on June 7th or March 15th, will be how the parties will actually choose their electors. Am I correct? Okay.

So, that being said, any additional questions or discussion on Senator Hise's

## 28

amendment? Seeing none, all in favor, please say "aye."

(Voice vote.)

SEN. RUCHO: All opposed, "nay." Ayes have it. That was unanimous.

Okay. So, there we are in regard to the bill as amended. Senator Apodaca.

SEN. APODACA: Mr. Chairman, I move that House Bill 2, as amended, be given a favorable report and rolled into a committee substitute unfavorable to the original bill.

SEN. RUCHO: Members of the committee, you have a motion for favorable report on House Bill 2 to be rolled into a committee substitute and unfavorable to the original bill. Any questions or comments? (No response.)

Seeing none, all in favor, please say "aye."

(Voice vote.)

SEN. RUCHO: All opposed, "nay." The ayes have it. And I think that concludes our meeting. Thank you for your attention.

(THE PROCEEDINGS IN THIS MATTER ADJOURNED AT 11:03 A.M.)

## 29

STATE OF NORTH CAROLINA
COUNTY OF GRANVILLE
CERTIFICATE

I, Robbie W. Worley, a duly commissioned Notary Public in and for the State of North Carolina, do hereby certify that on February 19, 2016, this proceeding was held before me at the time and place aforesaid, that all parties were present as represented, and that the record as set forth in the preceding pages represents a true and accurate transcription of the proceedings to the best of my ability and understanding.

IN WITNESS WHEREOF, I have hereto set my hand, this the 25th day of February, 2016.