UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| DAVID HARRIS, CHRISTINE BOWSER, and SAMUEL LOVE, <br><br>Plaintiffs,<br><br>v.<br><br>PATRICK MCCRORY, in his capacity as Governor of North Carolina, NORTH CAROLINA STATE BOARD OF ELECTIONS, and JOSHUA HOWARD, in his capacity as Chairman of the North Carolina State Board of Elections,<br><br>Defendants. | Case No. 1:13-cv-949 |

## MEMORANDUM OPINION

**PER CURIAM.**

Pending before the Court are plaintiffs' objections to the North Carolina General Assembly's 2016 Contingent Congressional Plan ("Contingent Congressional Plan"). Upon careful consideration of the plaintiffs' objections, the responses and replies thereto, the applicable law, and the entire record, the Court **DENIES** the plaintiffs' objections <u>as presented to this Court</u>. The Court's denial of the plaintiffs' objections <u>does not</u> constitute or imply an endorsement of, or foreclose any additional challenges to, the Contingent Congressional Plan.

I.

The relevant facts are fully set forth in this Court's previous decision, Harris v. McCrory, 13-cv-949, 2016 WL 482052 (M.D.N.C. Feb. 5, 2016). There, the Court held that the congressional map adopted by the North Carolina General Assembly in 2011 violated the Fourteenth Amendment: race was the predominant consideration with respect to Congressional Districts 1 and 12, and the General Assembly did not narrowly tailor the districts to serve a compelling interest. Having found that the 2011 Congressional Redistricting Plan violated the Fourteenth Amendment, the Court ordered that new congressional districts be drawn forthwith to remedy the unconstitutional districts. See Wise v. Lipscomb, 437 U.S. 535, 539-40 (1978).

Before enacting the Contingent Congressional Plan, the defendants filed a motion to stay this Court's order, which this Court denied. See ECF No. 148. The defendants then filed an emergency motion to stay this Court's order with the U.S. Supreme Court, which the Supreme Court denied. McCrory v. Harris, 136 S. Ct. 1001 (2016).

On February 18, 2016, the General Assembly enacted the Contingent Congressional Plan. On February 22, 2016, the plaintiffs filed a motion to establish a briefing schedule concerning the Contingent Congressional Plan. On February 23,

2

2016, the Court issued a scheduling order, directing, among other things, that the plaintiffs "state with specificity the factual and legal basis for [any] objection" to the Contingent Congressional Plan. ECF No. 153. On March 3, 2016, the plaintiffs filed their objections. On March 7, 2016, the defendants filed their response. On March 9, 2016, the plaintiffs filed their reply. The plaintiffs' objections are now ripe for the Court's review.

II.

As an initial matter, the Court must address two jurisdictional issues. On February 8, 2016, the defendants appealed this Court's decision on the merits to the U.S. Supreme Court. Thus, we must address the preliminary issue of whether jurisdiction in this Court was stripped by the filing of a notice of direct appeal. "The filing of a notice of appeal is an event of jurisdictional significance - it confers jurisdiction on the court of appeals and divests the district court of its control <u>over those aspects of the case involved in the appeal</u>." <u>Griggs v. Provident Consumer Disc. Co.</u>, 459 U.S. 56, 58 (1982) (per curiam) (emphasis added). Because the remedial phase of this case is not an "aspect[ ] of the case involved in the appeal," the Court retains jurisdiction over it.

3

Relatedly, although the defendants contend that this Court's review is limited to whether the new Congressional Districts 1 and 12 pass constitutional muster, precedent suggests that we have a responsibility to review the plan as a whole. McGhee v. Granville Cty., N.C., 860 F.2d 110, 115 (4th Cir. 1988). Nonetheless, while the Court reviews the Contingent Congressional Plan as a whole, that review is limited. If "the legislative body . . . respond[s] with a proposed remedy, a court may not thereupon simply substitute its judgment of a more equitable remedy for that of the legislative body; it may only consider whether the proffered remedial plan is legally unacceptable because it violates anew constitutional or statutory voting rights - that is, whether it fails to meet the same standards applicable to an original challenge of a legislative plan in place." Id. (citing Upham v. Seamon, 456 U.S. 37, 42 (1982)). In other words, while a court must not overreach when fashioning a remedy of its own, it must determine whether the legislative remedy enacted at its behest is in fact a lawful substitute for the original unconstitutional plan. Accordingly, the Court can, and will, consider the plaintiffs' objections to the entire Contingent Congressional Plan.

4

III.

The plaintiffs appear to raise two separate objections. The first objection is remarkably vague, suggesting that the Court should be "skeptical" of the Contingent Congressional Plan and the defendants' "warped conception of the original violation." Pls.' Reply, ECF No. 163 at 5, 7. While the Court may share the plaintiffs' skepticism about the General Assembly's process in drafting the Contingent Congressional Plan, including the exact criteria actually evaluated by the map drawer, Dr. Hofeller, the plaintiffs have not sufficiently proffered a theory on why this plan "violates anew constitutional or statutory voting rights." McGhee, 860 F.2d at 115. Therefore, the Court rejects the plaintiffs' first objection on the grounds that they failed to state with specificity the factual and legal basis for the objection.

The plaintiffs' second objection is that the Contingent Congressional Plan should be rejected as an unconstitutional partisan gerrymander. As Representative Lewis stated, "I acknowledge freely that this would be a political gerrymander." Hamilton Decl., ECF No. 155 at Ex. 3 (Tr. 46:5-11); see also id. (Tr. 51:12-52:5) ("[W]e want to make clear that we . . . are going to use political data in drawing this map. It is to gain partisan advantage on the map. I want that criteria to be clearly stated and understood. . . . I'm making clear that our

5

intent is to use — is to use the political data we have to our partisan advantage."). The Court is very troubled by these representations. Nevertheless, it is unclear whether a partisan-gerrymander claim is justiciable given existing precedent.

The Supreme Court has recognized that partisan gerrymanders "[are incompatible] with democratic principles." Vieth v. Jubelirer, 541 U.S. 267, 292 (2004) (plurality opinion); id. at 316 (Kennedy, J., concurring in judgment) (concluding that "partisan gerrymandering that disfavors one party is [not] permissible" as such "legislative classifications reflect no policy, but simply arbitrary and capricious action"); see also Ariz. State Legislature v. Ariz. Indep. Redistricting Comm'n, 135 S. Ct. 2652, 2658 (2015). "Even so, the Court in Vieth did not grant relief on the plaintiffs' partisan-gerrymander claim. The plurality held the matter nonjusticiable." Id. at 281. "Justice Kennedy found no standard workable in [Veith], but left open the possibility that a suitable standard might be identified in later litigation." Ariz. State Legislature, 135 S. Ct. at 2658.

In light of the plurality holding in Vieth, the Court's hands appear to be tied. 541 U.S. at 281 ("As the following discussion reveals, no judicially discernible and manageable standards for adjudicating political gerrymandering

6

claims have emerged. Lacking them, we must conclude that political gerrymandering claims are nonjusticiable. . . ."). While we find our hands tied, we note that it may be possible to challenge redistricting plans when partisan considerations go "too far." See Cox v. Larios, 542 U.S. 947, 952 (2004) (Scalia, J., dissenting) ("In the recent decision in Vieth v. Jubelirer, 541 U.S. 267 (2004), all but one of the Justices agreed that [politics] is a traditional criterion, and a constitutional one, so long as it does not go too far."). But it is presently obscure what "too far" means. Moreover, the plaintiffs have not provided the Court with a "suitable standard," see Ariz. State Legislature, 135 S. Ct. at 2658 - that is, one that is clear and manageable - to evaluate the partisan-gerrymander claim. Therefore, it does not seem, at this stage, that the Court can resolve this question based on the record before it. For these reasons, the Court rejects the plaintiffs' second objection as presented.

IV.

For the foregoing reasons, the Court denies the plaintiffs' objections as presented. The Court reiterates that the denial of the plaintiffs' objections does not constitute or imply an

7

endorsement of, or foreclose any additional challenges to, the Contingent Congressional Plan.

**SO ORDERED.**

_____ 6/2/16
Roger L. Gregory
United States Circuit Judge